*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MCDONALD Minors.

UNPUBLISHED
January 25, 2024

Nos. 365799; 365800
Macomb Circuit Court
Family Division
LC Nos. 2019-000385-NA &
2021-000176-NA

Before: GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

Respondent-father and respondent-mother appeal of right the trial court's order terminating their parental rights to their two minor children, MDM and ABM. Respondents challenge the trial court's determination that petitioner made reasonable efforts toward reunification of their family. Respondent-mother further contends that the trial court erred in finding that statutory grounds for termination existed under MCL 712A.19b(3)(c)(*i*). Finally, respondents assert that the trial court erred by finding termination was in the children's best interests. Because most of their arguments were waived and the trial court did not err in its best-interest determination, we affirm.

## I. FACTUAL BACKGROUND

Respondent-mother has a history with Children's Protective Services (CPS) that started in 2011. She has six older children who were previously removed from her custody, and her parental rights to at least three of those children were terminated. Respondent-father has a criminal history that includes prior convictions for second-degree criminal sexual conduct involving a minor. Only respondents' parental rights to MDM and ABM are at issue in this appeal.

MDM was removed from respondents' custody soon after his birth in 2019 and placed with his maternal grandmother and her husband. Based on respondents' no-contest pleas, the trial court acquired jurisdiction over MDM. The court ordered respondents to comply with treatment plans designed to address the barriers to reunification. The trial court subsequently acquired jurisdiction over ABM following her birth in 2021, and ABM was also placed with her maternal grandmother.

Both respondents completed parenting classes, but the agency workers who observed their visitations reported that respondents failed to demonstrate that they benefited from those classes.

-1-

Respondent-father was often inattentive to the children and unwilling to help respondent-mother. Petitioner was not able to obtain information from respondents' therapists about their progress in therapy. Respondent-mother failed to complete a domestic-violence treatment program, whereas respondent-father completed domestic-violence treatment, but continued to engage in altercations with respondent-mother. Respondent-father was also charged with fourth-degree child abuse for an incident where he spanked another child on the buttocks with enough force to leave handprint-shaped bruising. He ultimately pleaded guilty to a reduced charge of aggravated assault.

Supervised visitation with the children originally took place at the grandparents' home near Lansing, but that arrangement was discontinued after an incident in which respondent-father tossed then-two-month-old MDM in the air and caused a mild concussion and another incident when he shook the child to wake him up. Thereafter, visits were supervised at respondents' home, but this arrangement also did not work because of problems with unauthorized adults being present in the home, the unsanitary condition of the home, and respondent-father's aggression toward visitation supervisors. Visits were then moved to the agency office. Because the children were required to travel approximately 90 minutes each way for visits and respondents were not always consistent about attending visits, respondents were required to confirm their attendance at all scheduled visits by calling or sending a text message by 5:00 p.m. on the night before a visit and again by 6:00 a.m. on the day of the visit. They also had to arrive one hour before the scheduled start of each visit.

In September 2022, petitioner filed a supplemental petition for termination of respondents' parental rights, alleging that respondents failed to benefit from the services offered. Respondents stipulated to the existence of a statutory ground for termination of their parental rights under MCL 712A.19b(3)(c)(*i*) and they further stipulated that reasonable efforts toward reunification had been made, so the court scheduled a contested hearing to determine whether termination of respondents' parental rights was in the children's best interests. Following that hearing, the trial court concluded on April 12, 2023, that termination of respondents' parental rights was in the best interests of both children. Respondent-father and respondent-mother now appeal.

## II. LEGAL ANALYSIS

Respondents contend that the trial court erred by terminating their parental rights because petitioner failed to make reasonable efforts toward reunification. In particular, respondents argue that the visitation procedure established by petitioner was unduly onerous and complicated, and it sabotaged their efforts to develop and maintain a bond with their children. Also, both respondents insist that the trial court erred in finding that a statutory ground for termination was satisfied under MCL 712A.19b(3)(c)(*i*). Finally, respondents claim that the trial court incorrectly determined that termination was in the best interests of the children. Because the first two issues were waived, we shall address those issues together. Then we shall consider the trial court's finding that termination was in the best interests of the children.

## A. WAIVER OF ISSUES

To preserve the claim that "petitioner failed to provide 'adequate services' the respondent must 'object or indicate that the services provided to them were somehow inadequate . . . .' " *In re Atchley*, 341 Mich App 332, 336; 990 NW2d 685 (2022), quoting *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). Failure to preserve a claim in that manner results in forfeiture

of the claim and limits this Court to a review for plain error that affects substantial rights. See *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). Here, respondents not only failed to preserve their claim, but also waived their claim. Waiver refers to "intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). Waiver "differs from forfeiture, which has been explained as the failure to make the timely assertion of a right." *Id*. (quotation marks and citation omitted). A respondent who waives rights "may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citation omitted).

At the termination hearing, respondents' attorneys stipulated to the existence of a statutory ground for termination under MCL 712A.19b(3)(c)(*i*). Each respondent's counsel also agreed that reasonable efforts toward reunification had been made. Then the trial court personally questioned both respondents as follows:

> *THE COURT*: The parent, mother and father, you're stipulating to ground (c)(i) and that that is met and supported by the allegations in the petition today for the purposes of statutory grounds at this time and that they would be and are in fact, with the stipulation, supported and meet the grounds by clear and convincing evidence.
>
> Mother, is that correct?
>
> *MS. MCDONALD*: Yes, your Honor.
>
> *THE COURT*: And father?
>
> MR. MCDONALD: Yes, your Honor.
>
>                           \*    \*    \*
>
> *THE COURT*: All right. And for the purposes of (c)(i), both parents are satisfied that reasonable efforts were made, correct, mother?
>
> *MS. MCDONALD*: Yes, your Honor.
>
> *THE COURT*: Father?
>
> MR. MCDONALD: Yes, your Honor.

By stipulating that reasonable efforts toward reunification were made, respondents did not just fail to preserve the issue—they affirmatively waived it. Further, respondents waived their claim that termination of their parental rights was unwarranted under MCL 712A.19b(3)(c)(*i*) by expressly stipulating that clear and convincing evidence supported termination under that statutory ground. Thus, respondents are precluded from challenging the adequacy of petitioner's reunification efforts or the satisfaction of statutory grounds for termination on appeal. As a result, we shall only address the argument that termination of parental rights was not in the best interests of the children.

## B. BEST INTERESTS

Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is "in the child's best interests[.]" MCL 712A.19b(5); *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). The trial court's best-interest decision is reviewed for clear error. *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 637; 853 NW2d 459 (2014). A finding is clearly erroneous when, "although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). In considering a child's best interests, the trial court should weigh several factors, including " 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case-service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id.* at 714.

Here, the trial court concluded that termination was in both of the children's best interests. The trial court looked at respondent-mother's history with CPS and the issues arising out of abuse. Moreover, respondent-mother remained in a relationship with a partner who was aggressive toward her and the children, but she continued to deny the existence of domestic violence, and she failed to complete a domestic-violence treatment program. Also, the trial court noted both respondents' lack of verified legal income.

As for respondent-father, the trial court noted his criminal history and ongoing aggression issues. Respondent-father faulted petitioner for interfering with his parenting time, but petitioner's visitation procedures were not unduly onerous and were adopted strictly because of respondents' inconsistent visitation. More significantly, the evidence revealed that respondent-father failed to use parenting time advantageously to build a bond with his children. He often ignored the children and acted aggressively toward MDM. Additionally, petitioner presented substantial evidence that respondent-father lacked the temperament to satisfy the children's needs and to provide a safe and stable home for them.

The trial court stated that the children had not formed strong bonds with either respondent. The evidence showed that the children (and especially MDM) were traumatized by attending visits with respondents. MDM displayed anxiety and self-harming behaviors that were increased before and after his visits with respondents. He became aggressive toward ABM and the family dog after returning from visits. His therapist concluded that his behaviors were rooted in anxiety related to the visits. ABM also was anxious and sick before and after visits. She cried before visits, and she became upset when she saw that MDM was upset. Neither child asked about respondents or asked to see them. Both children had been in placement with the maternal grandparents since birth, and they referred to their grandparents as their mother and father. Significantly, the grandparents were willing to adopt both children and give them a permanent home, and they were able to provide the children with stability and permanence that respondents never demonstrated they could provide to the children. Accordingly, the trial court did not commit clear error by finding that termination of respondents' parental rights was in the best interests of both children.

Affirmed.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates